1
2
3
4
5
6
7

**UNITED STATES  DISTRICT COURT**

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

8

Northern District of California

9

Oakland Division

10

| | |
|---|---|
| HICHAM MESNAOUI, | No. C 11-03165 LB |
| Plaintiff, | **ORDER GRANTING (1) DEFENDANT'S MOTION TO SUBSTITUTE AND (2) DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| JAMIE BERLOWITZ, et al. | |
| Defendants. | |
| _____/ | [Re: ECF No. 19] |

11
12
13
14
15

### I.  INTRODUCTION

16

*Pro se* plaintiff Hicham Mesnaoui filed suit against two employees of the United States Department of State for violations of multiple international and domestic laws.  The United States moved to substitute itself as the proper defendant in the case and also to dismiss Mr. Mesnaoui's complaint with prejudice.  Pursuant to Civil Local Rule 7-1(b), the court finds that these matters are suitable for determination without oral argument and vacates the February 16, 2012 hearing.  For the reasons stated below, the court GRANTS the United States's motions.

17
18
19
20
21
22

### II.  BACKGROUND

23

On June 27, 2011, Mr. Mesnaoui filed suit against Jamie Berlowitz and Christopher Bergaust, both of whom are or were federal employees.  Complaint, ECF No. 1.[1]  In his complaint, Mr. Mesnaoui alleges that he is a Moroccan citizen; that his ex-wife (Maryam Bint Abrahman)

24
25
26
27
28

_____

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

C 11-03165 LB

UNITED STATES DISTRICT COURT
For the Northern District of California

1 fraudulently secured a passport for their minor child, Selma, from Mr. Bergaust, an employee of the

2 U.S. State Department in Casablanca, Morocco; and that his ex-wife used this fraudulently obtained

3 passport to kidnap Selma and bring her to the United States. *See id.* at 1-3. It appears from the

4 complaint and attached documents that these events occurred sometime in or before August 2009.

5 *See id*. at 4-16. Mr. Mesnaoui also alleges that in August 2009 Mr. Berlowitz, an employee of the

6 U.S. State Department in San Francisco, California, took possession of the allegedly fraudulent

7 passport. *Id*. at 2.

8    In so doing, Mr. Mesnaoui alleges that Mr. Berlowitz and Mr. Bergaust violated the "Moroccan

9 nationality code," the United States - Morocco Free Trade Agreement, "international human rights,"

10 18 U.S.C. § 241, and 8 U.S.C. § 1433, and otherwise abused their power. *Id*. In his prayer for relief,

11 Mr. Mesnaoui seeks $20,000,000 in compensation for the "personal injury of me and my child and

12 my senior parents" as well as various forms of non-monetary relief, including, that the fraudulently

13 obtained passport be returned to him; that he be granted full custody of Selma and be allowed to take

14 her home to Morocco; that the government investigate the forging of the passport; and that the

15 government enforce various criminal, immigration and/or civil rights statutes. *Id*. at 3.

16    On December 20, 2011, the United States filed a motion to be substituted as the proper defendant

17 in this action and to dismiss Mr. Mesnaoui's complaint. Motion, ECF No. 15. Mr. Mesnaoui

18 opposed the motion. Opposition, ECF No. 24.

19                                    **III.  DISCUSSION**

20 A.  The United States's Motion to Substitute Party

21    Under the Federal Employees Liability Reform and Tort Compensation Act, otherwise known as

22 the Westfall Act, a federal employee is immune from suit upon certification of the Attorney General

23 that the employee was acting within the scope of his employment. *See* 28 U.S.C. § 2679(d)(1). As

24 to the events alleged in Mr. Mesnaoui's complaint, the United States Attorney, pursuant to 28 U.S.C.

25 § 2679(d) and 28 C.F.R. § 15.3, has certified that Mr. Berlowitz and Mr. Bergaust were acting

26 within the course and scope of their federal employment. Certification, ECF No. 21. Such a

27 certification is "*prima facie* evidence that a federal employee was acting in the scope of her

28 employment at the time of the incident." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995).

C 11-03165 LB
                                           2

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   Mr. Mesnaoui, as plaintiff, bears the burden of disproving the certification by a preponderance of the

2   evidence. *Id.*

3   *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1150-51 (9th Cir. 2003).

4       While Mr. Mesnaoui ostensibly opposes the United States's motion to substitute, he provides no

5   evidence, let alone a preponderance of evidence, to disprove the United States Attorney's

6   certification. *See* Opposition, ECF No. 24 at 3.  Accordingly, the court grants the United States's

7   motion.  The United States is the only proper defendant, and Mr. Berlowitz and Mr. Bergaust are

8   dismissed from this case.

9   B.  The United States's Motion to Dismiss

10      "The basic rule of federal sovereign immunity is that the United States cannot be sued at all

11  without the consent of Congress."  *Block v. North Dakota*, 461 U.S. 273, 287 (1983) (citations

12  omitted).  Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its

13  agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S.

14  549, 554 (1988); *Fed. Housing Admin. v. Burr*, 309 U.S. 242, 244 (1940)).  "Sovereign immunity is

15  jurisdictional in nature.  Indeed, the 'terms of [the United States'] consent to be sued in any court

16  define that court's jurisdiction to entertain the suit.'"  *Id.* (quoting *United States v. Sherwood*, 312

17  U.S. 584, 586 (1941), and citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ( "It is

18  axiomatic that the United States may not be sued without its consent and that the existence of

19  consent is a prerequisite for jurisdiction.").

20      Thus, in order for Mr. Mesnaoui's claims to be actionable, the claims must be ones for which the

21  United States has waived sovereign immunity.  As described above, Mr. Mesnaoui alleges a variety

22  of claims, but none of them are ones for which sovereign immunity has been waived.  They are

23  barred for this reason.[2]

24  _____

25      [2] Even if sovereign immunity had been waived, his claims would fail for other reasons as
    well.  First, Mr. Mesnaoui alleges a violation of the Moroccan Nationality Code, but this court's
26  jurisdiction is limited to civil actions arising under the Constitution, laws, or treaties of the United
    States and does not encompass actions arising under the laws of foreign nations.  28 U.S.C. § 1331.
27  Second, Mr. Mesnaoui alleges a violation of the United States - Morocco Free Trade Agreement, but
28  he has no private right of action with respect to this agreement.  *See* United States–Morocco Free
    Trade Agreement Implementation Act, Pub. L. No. 108–302, § 102(c) 118 Stat. 1103, 1105 (2004)

C 11-03165 LB
                                         3

UNITED STATES DISTRICT COURT
For the Northern District of California

1    It would not be inconceivable, however, that Mr. Mesnaoui's claims for damages might be

2  construed as ones brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b),

3  which "provides a limited waiver of the sovereign immunity of the United States for torts committed

4  by federal employees acting within the scope of their employment." *Nurse v. United States*, 226

5  F.3d 996, 1000 (9th Cir. 2000) (citing *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995)).[3]

6  "Under the FTCA, the United States may be held civilly liable for the torts of its employees 'in the

7  same manner and to the same extent as a private individual under like circumstances.'" *Id.* (quoting

8  28 U.S.C. § 2674).  A claim under the FTCA must be:

9        [1] against the United States, [2] for money damages, . . . [3] for injury or loss of

10

11  ("No person other than the United States—(1) shall have any cause of action or defense under the
   Agreement or by virtue of congressional approval thereof; or (2) may challenge, in any action

12  brought under any provision of law, any action or inaction by any department, agency, or other
   instrumentality of the United States, any State, or any political subdivision of a State, on the ground

13  that such action or inaction is inconsistent with the Agreement.").  Third, Mr. Mesnaoui alleges a

14  violation of "international human rights, article 15."  This allegation clearly is insufficient, but to the
   extent Mr. Mesnaoui's is attempting to allege a violation of Article 15 of the University Declaration

15  of Human Rights, G.A. Res. 217A (III), U.N. Doc. A/810 (1948), which states that "(1) Everyone
   has the right to a nationality[ and] (2) No one shall be arbitrarily deprived of his nationality nor

16  denied the right to change his nationality," the United States Supreme Court has made clear that "the

17  Declaration does not of its own force impose obligations as a matter of international law." *Sosa v.
   Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (citing Humphrey, "The U.N. Charter and the

18  Universal Declaration of Human Rights," THE INTERNATIONAL PROTECTION OF HUMAN RIGHTS 39,

19  50 (E. Luard ed. 1967)) (footnote omitted).  Fourth, Mr. Mesnaoui alleges a violation of 8 U.S.C. §
   1433(a)(3), which allows a parent who is a citizen of the United States (or, if the citizen parent has

20  died during the preceding 5 years, a citizen grandparent or citizen legal guardian) to apply for
   naturalization on behalf of a child born outside of the United States if the child is under the age of

21  eighteen. *See* 8 U.S.C. § 1433(a)(3).  Nowhere in his complaint, though, does he allege that anyone

22  has applied for naturalization for any child.  And, fifth, to the extent that Mr. Mesnaoui attempts to
   bring a claim for violation of 18 U.S.C. § 241, "[this law] provide[s] for criminal prosecution by the

23  government and do[es] not provide a private right of action to individual litigants" like Mr.

24  Mesnaoui. *Buza v. California Dept. of Corrections and Rehabilitation*, No. 10-CV-00326-LHK,
   2010 WL 4316919, at *2 (N.D. Cal. Oct. 27, 2010) (citing *Cok v. Cosentino*, 876 F.2d 1 (10th Cir.

25  1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242.");
   *Haile v. Sawyer*, No. C 02-5723 MJJ, 2003 WL 1907661, at *3 (N.D. Cal. Apr. 14, 2003)

26  (dismissing all of Plaintiffs claims under Title 18 because Plaintiff is not authorized to bring claims

27  under criminal statutes)).

28        [3] Indeed, the United States did exactly that in its motion to dismiss. *See generally*, Motion,
   ECF No. 19.

C 11-03165 LB
                                        4

1  property, or personal injury or death [4] caused by the negligent or wrongful act or
2  omission of any employee of the Government [5] while acting within the scope of his
   office or employment, [6] under circumstances where the United States, if a private
3  person, would be liable to the claimant in accordance with the law of the place where
   the act or omission occurred.  28 U.S.C. § 1346(b).

4  *Meyer*, 510 U.S. at 477.  "A claim comes within this jurisdictional grant – and thus is 'cognizable'

5  under § 1346(b) – if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it

6  alleges the six elements outlined above."  *Id*. (citing *Loeffler*, 486 U.S., at 562).

7      Here, though, as the United States points out, Mr. Mesnaoui's potential FTCA claim is not one

8  for which a private person could be liable.  Under this "private party analog" element, a plaintiff

9  must show that the claim asserted is analogous to a "comparable cause of action against a private

10 individual."  *C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir. 1987).  "When considering

11 whether a private analog exists, the issue is not whether a state or other governmental entity would

12 be liable for the conduct alleged, but whether a private individual would be liable under analogous

13 circumstances."  *Figueroa v. United States*, 739 F.Supp.2d 138, 140 (citing *United States v. Olson*,

14 546 U.S. 43, 45-46 (2005)).  "A comparable claim is stated where an analogy can be drawn between

15 the conduct forming the basis of the claim against the federal government, and that which could

16 form the basis of a cause of action against a private individual."  *Id*. at 141 (citing *C.P. Chemical*,

17 810 F.2d at 37).

18     Determining whether a private analog exists is not as simple as it may seem.  As the District

19 Court in *Figueroa v. United States*, 739 F.Supp.2d 138 (E.D.N.Y. 2010) recently explained:

20     For example, a comparable private analog is stated where a government employee
       fails to maintain a safe path of travel at a federal facility.  In such a case, the tortious
21     conduct of an individual who fails to maintain his property is analogous to the
       conduct of the government employee who similarly fails in his duty to maintain
22     safety on government property. *See*, *e.g.*, *Silverman v. United States*, 2008 WL
       1827920 *11-12 (E.D.N.Y. 2008).  On the other hand, no private analog is
23     necessarily stated, for example, where the FTCA claim is based only upon an alleged
       failure to enforce a Federal statute or government regulation.  Chen [v. United
24     States], 854 F.2d [622,] 626[ (2d.Cir. 1988)].  In such a case, no private conduct
       analogy can be drawn, and the FTCA claim is properly dismissed. *See*, *e.g.*, *Dorking*
25     *Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996); *Chen*, 854 F.2d at 626.
       No FTCA claim is stated in the latter example because the action forming the basis of
26     the claim, "is action of the type that private persons could not engage in and hence
       could not be liable for under local law." *Chen*, 854 F.2d at 626, quoting, *Jayvee*
27     *Brand v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  *Id*. at 141.  In discussing *Figueroa*, a court in the Southern District of Ohio also explained that:

2   The *Figueroa* court was quick to recognize that the "private party analog" question is
3   fairly nuanced, and that it is not always fatal to an FTCA claim to find that the
    function performed by the governmental employee is "uniquely governmental."
4   Some activities, such as operating a lighthouse or inspecting a mine for compliance
    with federal safety regulations, are performed only by governmental officials, but
5   private persons can engage in similar functions such as warning people of dangers or
    inspecting mines for other purposes. *Figueroa*, 2010 WL 3704187, *3, citing **United
6   States v. Olson**, 546 U.S. 43, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005).  Indeed, as
    early as its decision in *Indian Towing Co. v. United States*, 350 U.S. 61, 64, 76 S.Ct.
7   122, 100 L.Ed. 48 (1955), the Supreme Court had rejected the notion that the FTCA
    "must be read as excluding liability in the performance of activities which private
8   persons do not perform."  The Court directed the lower courts to look beyond the
    exact circumstances under which the government employee had acted and to
9   determine if there were "like" circumstances in the private sector where such actions
    could legitimately form the basis for tort liability.

10  *Howard v. U.S. Dist. Court for the Southern Dist. of Ohio*, No. 2:10-cv-757, 2011 WL 1043961, at

11  *4 (S.D. Ohio Mar. 17, 2011).

12      Here, even looking beyond the exact circumstances at hand, the court has been unable to divine a

13  suitable private party analog to Mr. Mesnaoui's claims.  As summarized above, he alleges that his

14  ex-wife fraudulently secured a passport for their minor child, Selma, from Mr. Bergaust, in

15  Casablanca, Morocco; and then used this fraudulently obtained passport to kidnap Selma and bring

16  her to the United States.  *See* Complaint, ECF No. 1 at 1-3.  Later, Mr. Berlowitz took possession of

17  the allegedly fraudulent passport. Id. at 2.  Issuing and confiscating passports, however, are not

18  activities that private persons can engage in.  Only the federal government may perform these tasks.

19  *See* 22 U.S.C. § 211a ("The Secretary of State may grant and issue passports, and cause passports to

20  be granted, issued, and verified in foreign countries by diplomatic and consular officers of the

21  United States and by such other employees of the Department of State who are citizens of the United

22  States as the Secretary of State may designate . . . ."); 22 C.F.R. §§ 51.7(a) ("A passport at all times

23  remains the property of the United States and must be returned to the U.S. Government upon

24  demand."), 51.62(a)(2) ("The Department may revoke or limit a passport when . . . [t]he passport has

25  been obtained illegally, fraudulently or erroneously; was created through illegality or fraud practiced

26  upon the Department; or has been fraudulently altered or misused.").  Unlike the more difficult cases

27  discussed in *Figueroa* and *Howard*, there are no circumstances in the private sector that are "like"

28  those of the State Department in relation to the issuance of passports, and the court is unaware of

C 11-03165 LB

UNITED STATES DISTRICT COURT
For the Northern District of California

1   any case law holding differently.  In fact, in the only case the court found involving passport-related

2   FTCA claims, the court concluded that no private party analog existed.  *See Figueroa*, 739

3   F.Supp.2d at 142 (holding that the conduct forming the basis of Plaintiff's complaint – the allegedly

4   negligent issuance of a passport – lacks a private analog and therefore cannot form the basis of a

5   claim pursuant to the FTCA).  Thus, even if the court construed Mr. Mesnaoui's claims as ones

6   brought under the FTCA, they would still fail for this reason.

7       If that were not enough, "a tort claim [under the FTCA] 'shall be forever barred' unless it is

8   presented 'within two years after such claim accrues.'"  *Hensley v. United States*, 531 F.3d 1052,

9   1056 (9th Cir. 2008) (quoting 28 U.S.C. § 2401(b)).  "As a general rule, a claim accrues 'when a

10  plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Id.* (quoting

11  *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (internal quotation marks omitted)).

12  Importantly, "the statute of limitations in 28 U.S.C. § 2401(b) is jurisdictional and, consequently, . . .

13  equitable doctrines that otherwise could excuse a claimant's untimely filing do not apply."  *Marley*

14  *v. United States*, 567 F.3d 1030, 1032 (9th Cir. 2009).  Here, all of the conduct alleged by Mr.

15  Mesnaoui occurred in or before August 2009, and there is no allegation or evidence suggesting that

16  Mr. Mesnaoui presented his claim to the State Department by August 2011.  In fact, the United

17  States submitted along with its motion a declaration from a State Department employee noting that

18  no administrative claim has even been received from Mr. Mesnaoui.  Dantzler Declaration, ECF No.

19  20 at 1.  Without such an allegation or evidence, Mr. Mesnaoui's potential FTCA claim is barred.[4]

20

21      [4] Mr. Mesnaoui's potential FTCA claim arguably fails because of the "foreign country

22  exception" as well.  "The FTCA's foreign country exception provides that the United States may not
    be held liable in tort for acts or omissions 'arising in a foreign country.'"  *Nurse v. United States*,

23  226 F.3d 996, 1003 (9th Cir. 2000) (quoting 28 U.S.C. § 2680(k); and citing *Donahue v. U.S. Dept.
    of Justice*, 751 F.Supp. 45 (S.D.N.Y.1990)).  "The purpose of the exception is to ensure that the

24  United States is not exposed to excessive liability under the laws of a foreign country over which it

25  has no control."  *Id.* (citing *Sami v. United States*, 617 F.2d 755, 762-63 (D.C. Cir. 1979).  "For the
    purposes of the FTCA, an act 'arises' 'where the negligent act or omission occurs,' *Cominotto v.*

26  *United States*, 802 F.2d 1127, 1130 (9th Cir.1986), or 'where the act necessary to avoid neg-ligence
    should have occurred.'"  *Id.* (quoting *Grunnet v. United States*, 730 F.2d 573, 575 (9th Cir.1984).

27  "The place where the loss or injury is actually felt is not necessarily controlling."  *Id.* (citing *Leaf v.*

28  *United States*, 588 F.2d 733, 735 (9th Cir. 1978)).  As the acts alleged against Mr. Bergaust appear
    to have taken place in Morocco, the FTCA's "foreign country exception" would appear to bar his

C 11-03165 LB

UNITED STATES DISTRICT COURT
For the Northern District of California

1

### IV. CONCLUSION

2    Based on the foregoing, the United States' motion to dismiss Mr. Mesnaoui's complaint is

3  GRANTED.  Mr. Mesnaoui's complaint is DISMISSED WITH PREJUDICE.[5]

4    This disposes of ECF No. 19.

5    **IT IS SO ORDERED.**

6  Dated: February 13, 2012

7                                                                              LAUREL BEELER
                                                        United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
_____

25  claim in that respect.

26        [5] In light of Mr. Mesnaoui's complaint being dismissed with prejudice, the court also
DENIES his motion for appointment of counsel.  Motion for Appointment of Counsel, ECF No. 15.
27  While the court acknowledges Mr. Mesnaoui's difficulties with proceeding pro se, the record
indicates that he has been notified that Family Court for the Santa Clara County Superior Court has
28  jurisdiction over his child custody issues.  Mesnaoui Declaration, ECF No. 25 at 9.

C 11-03165 LB